September 17, 2009

Steven A. Beckelman, Esquire
McCarter & English, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102

Christine M. Gravelle, Esquire
Markowitz Gravelle, LLP
3131 Princeton Pike
Building 3D, Suite 200
Lawrenceville, New Jersey 08648

                                 Re:    Solomon Dwek - Case No. 07-11757

                                        Charles A. Stanziale, Jr., Chapter 11 Trustee
                                        vs. American Friends of Yechave Daat
                                        Adversary No. 09-1262

                                        Defendant's Motion for Summary Judgment
                                        Document Number 6
                                        Hearing Date: June 8, 2009 & July 20, 2009

Dear Counsel:

      The Court took oral argument on the Defendant's motion for summary judgment on June 8th and July 20th, 2009. At oral argument on June 8th, the Court asked the parties to address the issue of whether 11 U.S.C. § 548(a)(2)(A) precluded a cause of action based on a fraudulent transfer relating to a charitable contribution to a qualified religious organization. At oral argument on July

20$^{th,}$ the parties raised additional issues and the Court permitted the parties to file a final set of supplemental briefs. The following represents the Court's findings of fact and conclusions of law.

On May 8, 2008, Defendant American Friends of Yechave Daat ("Friends") moved for summary judgment on the Trustee's five count complaint filed on February 12, 2009. On July 16, 2009, the Trustee filed an amended complaint that added a sixth count based on breach of contract.

The Court will first address two misstatements in the Trustee's July 27th reply brief. First, the Trustee states that "if 11 U.S.C. § 548(a)(2) applies at all, it only applies to Count Two, and accordingly, all other Counts survive a motion for summary judgment." *Trustee's brief* at 1. That is a misstatement of the law[1]. The Trustee's complaint has two constructive fraudulent transfer counts, Counts IV and V, that are based on the New Jersey Fraudulent Transfer Act. The state law causes of action in Counts IV and V rise or fall with § 548(a)(2). Section 544 qualifies a trustee's right to recover fraudulent transfers pursuant to state law. Section 544 provides that the grant of avoidance rights "shall not apply to a transfer of a charitable contribution ... that is not covered by section 548(a)(1)(B), by reason of section 548(a)(2)." 11 U.S.C. § 544(b)(2).

Next, the Trustee states that the McLaney and Universal Church "cases hold as **binding** law that 'gross annual income' shall be determined by looking at 'gross adjusted income.'" *Trustee's brief* at 5 (emphasis added). *See,* Universal Church v. Geltzer, 463 F.3d 218, 223 (2d Cir. 2006); In re McLaney, 375 B.R. 666 (M.D. Ala. 2007). Again, that is incorrect as a matter of law. The

---

[1] This is particularly troubling to the Court because Trustee's counsel in another adversary proceeding, Trustee v. Congregation Yeshiva of Telshe Alumni, Inc. 09- 1227 , was asked to address the same issue and correctly concluded that the state constructive fraudulent transfer counts could not stand if § 548(a)(2) applied. At oral argument on a motion to dismiss in that adversary, the Court told counsel that the cases needed to be coordinated better because the estate would not pay for multiple law firms to research the same issue. *See,* Transcript of July 12, 2009 hearing at p. 18. Apparently, that coordination has not happened.

only precedent that is binding on this Court are published decisions from the Third Circuit Court of Appeals and the United States Supreme Court. The McLaney and Universal Church decisions - coming from the Middle District of Alabama and the Second Circuit Court of Appeals respectively - are at best persuasive authority in guiding this Court's decision.

The Court now turns to the question of how much persuasive force, if any, these cases have. In Universal Church v. Geltzer, 463 F.3d 218, 223 (2d Cir. 2006) the issue before the court was whether a court should consider individual transfers or an aggregate of annual transfers in a § 548(a)(2)(A) analysis. The court began with a recognition that "[s]tatutory interpretation always begins with the plain language of the statute, assuming the statute is unambiguous. *See*, Barnhart v. Sigmon Coal Co., 534 U.S. 438, 450, 122 S.Ct. 941, 151 L.Ed.2d 908 (2002); Auburn Hous. Auth. v. Martinez, 277 F.3d 138, 143 (2d Cir.2002)." Universal Church at 223. The court found ambiguity in § 548(a)(2)(A)'s use of the singular "transfer" because of the operation of § 11 U.S.C. § 102(7), which provides that "[i]n this title-... (7) the singular includes the plural." As a result of that ambiguity, the court turned to the legislative history. After a thorough review of the legislative history, the court held that:

> Because we conclude that Congress intended the safe harbor to apply to the aggregate of a debtor's charitable contributions, we apply Section 102(7) in interpreting Section 548(a)(2) in order to effectuate that intent. Therefore, we read Section 548(a)(2) to exempt from avoidance charitable contributions where those contributions do not exceed 15 percent of the debtor's adjusted gross income. Thus, we affirm the district court and hold that the safe harbor under Section 548(a)(2) requires consideration of the debtor's aggregate annual contributions, not each individual contribution.

Universal Church, at 225.

This Court finds it significant that in the legislative history that the Universal Church court reviewed, the term "gross annual income" appeared six times and the term "adjusted gross income"

did not appear at all. This Court's own review of the legislative history did not uncover a single mention of "adjusted gross income". RELIGIOUS LIBERTY AND CHARITABLE DONATION PROTECTION ACT OF 1998, 144 Cong. Rec. H3999-02, June 03, 1998. At no point in the opinion did the Universal Church court focus on phrase "adjusted gross income." It is therefore difficult to view its use in the statement "we read Section 548(a)(2) to exempt from avoidance charitable contributions where those contributions do not exceed 15 percent of the debtor's adjusted gross income" as anything other than a simple scrivener's error. As previously noted, the Universal Church court put great stock in the principle that statutory analysis must begin with the plain language of the statute. Id. at 223, as well as its corollary that the analysis also ends there if the language is unambiguous. The statutory language here is "gross annual income," and the Universal Church court did not note any ambiguity in that language. Thus, it is illogical to conclude that the Universal Church court decided to disregard the plain language of the statute when it did not find it ambiguous. Accordingly, the Court finds the Universal Church case to be of no precedential weight on the issue of whether this Court should read the phrase "gross annual income" to mean "adjusted gross income".

The Court finds In re McLaney, 375 B.R. 666 (M.D. Ala. 2007) equally unavailing. The McLaney case did not even address § 548; the issue in that case was how charitable contributions should be considered in determining whether a debtor was entitled to an undue hardship discharge of student loans. The McLaney court concluded that "bona fide tithing or charitable contributions are to be examined under the same reasonableness standard as other reasonable and necessary expenses under a § 523(a)(8) undue hardship analysis." Id. at 682. It was in that context that the court noted that the "McLaneys' tithe amounts to less than ten percent of their net income." Id.

That fact was significant to the McLaney court because of its bearing on the reasonableness of the tithe amount, but it has no bearing on the issue of whether the court should read the phrase "gross annual income" to mean "adjusted gross income".

Neither McLaney nor Universal Church persuades this Court that it should read the phrase "gross annual income" in § 548(a)(2)(A) to mean anything other than what it says. Since the statutory language is unambiguous, there is no reason to resort to the legislative history; nonetheless, the legislative history supports a finding that the phrase means what it says. As previously noted, nowhere in the legislative history is there any indication that "gross annual income" means "adjusted gross income".

In In re Lewis, 401 B.R. 431 (Bankr. C.D. Cal. 2009), the court noted that the "Bankruptcy Code does not define the term "gross annual income," and there is no reported case defining "gross annual income" within the meaning of § 548(a)(2)." Id. at 438. After a cogent analysis, the Lewis court concluded that "'gross income' as defined in the Internal Revenue Code should likewise be used to define 'gross annual income' in § 548(a)(2)." Id. at 442. This Court finds that to be the most persuasive analysis of this issue not only because it focuses on the precise issue before the Court, but also because it starts with the plain language of the statute and uses universally accepted cannons of statutory construction to arrive at its conclusion. Accordingly, this Court finds that the term "gross annual income" in § 548(a)(2) means total income without regard to any deductions or expenses.

The Court still cannot grant summary judgment on Counts II, IV and V. First, there is a material factual dispute concerning whether the $100,000 payment was a charitable contribution. Second, the Trustee provided the Court with only an adjusted gross income figure. Friends'

supplemental brief filed July 17th indicates that Friends has a copy of Solomon Dwek's 2005 tax return but is prohibited from filing it with the Court due to a confidentiality agreement. Based on the tax return, Friends takes the position that the $100,000 contribution at issue is less than 15% of the Debtor's gross annual income. If that is the case, and the $100,000 transfer is found to be a charitable donation, then § 548(a)(2)(A) will shield that transfer from recovery by the Trustee.

That leaves Counts I and III, which allege actual fraud under the Bankruptcy Code and state law. The defense's original legal theory, although not clearly articulated in the moving papers, appears to be that the $100,000 was payment for work performed on the translation. The Trustee argues that such a defense relates to information entirely in the hands of Friends or its affiliate Yechave Daat and unavailable to him. Accordingly, on that ground alone, summary judgment should be denied pending the completion of discovery. The Court agrees. Federal Rule of Civil Procedure 56(f) addresses instances where a non-movant opposes summary judgment on the grounds that additional discovery is required, and provides:

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

*Fed. R. Civ. P*. 56(f). The Third Circuit has held that motions for a continuance of a motion for summary judgment for discovery purposes are ordinarily granted as a matter of course if the information concerning the facts to be discovered is solely in possession of the party moving for summary judgment. San Filippo v. Bongiovanni, 30 F.3d 424, 432 (3d Cir. 1994) ("A district court has discretion in acting on Rule 56(f) motions ... However, where relevant information sought is in the hands of the moving party, 'a district court should grant a Rule 56(f) motion

6

almost as a matter of course unless the information is otherwise available to the non-movant'."); *see also*, In re NorVergence, Inc., 384 B.R. 315 (Bankr. D.N.J. 2008). As an alternative basis, the court notes there are also material factual disputes, the most significant being that it remains unresolved whether the $100,000 payment was for services rendered or a charitable contribution or a hybrid.

The final issue is the propriety of the Trustee's Amended Complaint adding a Count VI. The Trustee maintains that he has an absolute right to amend the complaint under Fed. R. Civ. Pro. 15 because the defendant's summary judgment motion does not count as a responsive pleading. Whether that be the case or not, the Court will permit the filing of the amended complaint. Courts are free to grant a party leave to amend whenever "justice so requires," Fed. R. Civ. P. 15(a)(2), and requests for leave should be granted with "extreme liberality." Moss v. U.S. Secret Service, 572 F.3d 962, 972 (9th Cir. 2009). Since there has been no inkling that the Trustee was dilatory in seeking to amend or that such amendment was brought for an improper purpose, the Court will allow it.

Accordingly, summary judgment must be denied. The Trustee should submit a form of order in accordance with this opinion.

*/s/ Kathryn C. Ferguson*
KATHRYN C. FERGUSON
US Bankruptcy Judge